UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

FONJECK ERIC AZOH

No. 21-MJ-00006

**UNITED STATES'S MEMORANDUM IN
SUPPORT OF PRETRIAL DETENTION**

By almost any measure, the defendant poses a serious flight risk. The defendant became aware of the government's investigation in November 2020 and fled the United States unbeknownst to law enforcement. He has only been brought before the Court now after being located in Mexico and expelled from the country. He is not a United States citizen. And he is known by the government to possess and use hundreds of false identities. Accordingly, the Court should order that the defendant be detained pursuant to 18 U.S.C. § 3142 pending further proceedings in this matter.

**BACKGROUND**

Between January 2019 and the present, the defendant and others have orchestrated a sophisticated nationwide scheme to defraud consumers. The defendant or other conspirators setup various websites which offered pets for sale. Those "pets" were nonexistent; they were a ruse intended to trick victims into sending money to the defendant. The defendant personally used more than 200 different false identities to interface with victims who wanted to purchase those pets. (Aff. ¶ 25.) The defendant directed victims to send money as payment for the pet to one of those false identities via a money transfer service, which the defendant personally collected at money outlets on at least 282 occasions. (Aff. ¶ 25.) The government is continuing

to assess the losses from the scheme, but at the present time law enforcement knows that the scheme defrauded victims residing in over forty states of at least $158,000.  (Aff. ¶ 25.)  No less than thirty-six individuals to date have filed consumer complaints after sending money to the defendant.  (Aff. ¶ 26.)

On October 5, 2020, law enforcement agents with Customs and Border Protection ("CBP") came into contact with the defendant at Washington Dulles International Airport while the defendant was awaiting a flight to Yaoundé, Cameroon.  (Aff. ¶ 35.)  In the course of that contact, CBP asked the defendant whether he was aware of the outbound currency reporting requirements.  (Aff. ¶ 36.)  the defendant stated that he was aware of those requirements; that he had $10,000 with him; and that he had not completed the mandatory FinCEN Form 105, also known as a Currency and Monetary Instrument Report ("CMIR").  (Aff. ¶ 36.)  The defendant then completed a CMIR in which he documented that he was in possession of $10,000 in U.S. currency.  (Aff. ¶ 36.)  However, in a search of the defendant's person and carry-on bags, CBP discovered more than $43,000 in cash.  (Aff. ¶ 37.)  When CBP asked why the defendant had not reported the full amount of currency he was transporting, he claimed the currency over $10,000 was not "his" money because it had been given to him.  (Aff. ¶ 37.)  The defendant then later claimed that he thought he only had to report $10,000 which he had immediately on his person—not the additional cash that he possessed in his carry-on bag.  (Aff. ¶ 38.)  CBP took custody of the full amount of cash and electronic devices that the defendant was carrying at the time, and allowed the defendant to continue on his travel.  (Aff. ¶¶ 38-40.)  The defendant returned to the United States from Cameroon on or about November 7, 2020.  (Aff. ¶ 42.)

On November 19, 2020, law enforcement agents executed a search warrant at the defendant's residence in Mount Rainier, Maryland.  (Aff. ¶ 43.)  The defendant was not arrested

at the time of the search. (Aff. ¶ 43.)  Nonetheless, the defendant was advised of his *Miranda* rights; the defendant waived those rights and agreed to be interviewed by law enforcement. (Aff. ¶ 44.)  The defendant claimed that another individual made the fake identification cards that he had used during the scheme; and that he had not used websites as part of a fraud. (Aff. ¶ 44.)  However, the defendant admitted that he had spoken to a victim on the phone once after the victim confronted him about not receiving a dog she had purchased; that he had collected money sent by victims using false identifications; and that he had kept some of the money he collected before sending the proceeds to someone in Africa. (Aff. ¶ 44.)  At the conclusion of the interview, law enforcement agents served the defendant with a subpoena that required him to appear on December 16, 2020, before a grand jury in the District of Columbia to provide a handwriting exemplar and to produce all documents related his interests in foreign bank accounts. (Aff. ¶ 45.)  At some time after November 19, 2020, the precise date being unknown, the defendant left the United States without being detected by law enforcement.

On December 16, 2020, the defendant failed to appear before the grand jury as required by the subpoena. (Aff. ¶ 45.)  On December 22, 2020, Chief Judge Beryl A. Howell issued a material witness warrant for the defendant's failure to appear on December 16. *In re Grand Jury Subpoena to Fonjeck Eric Azoh*, No. 20-mw-00002.

On January 4, 2021, the U.S. Marshals Service advised the case agent for this matter that the defendant was presently in Mexico City, Mexico.  The Court issued an arrest warrant in the above-captioned matter on January 7, 2021.  The defendant was expelled from Mexico to the United States on the same date.

**APPLICABLE LEGAL PRINCIPLES**

A defendant must be detained pending trial if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). The Bail Reform Act ("BRA") requires the judicial officer to assess various factors, as described below, before releasing or detaining a defendant. 18 U.S.C. § 3142(g). The Court shall "take into account the available information concerning "(1) the nature and circumstances of the offense charged . . .; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . ; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

**ARGUMENT**

As discussed further below, the statutory factors in 18 U.S.C. § 3142(g) weigh in favor of the pretrial detention of the defendant. The crimes charged in the Complaint are serious, the evidence against the defendant is compelling, and the defendant simply cannot be relied upon to appear before the Court for future proceedings.

**I.    Nature and Circumstances of the Offense Charged**

The defendant defrauded victims in at least forty states by using more than 200 alias identities, with losses to his victims of at least $158,000. (Aff. ¶¶ 25-26.) The criminal Complaint in this matter identifies no less than five different federal statutes that the defendant has violated: wire fraud in violation of 18 U.S.C. § 1343, money laundering in violation of 18 U.S.C. § 1956, conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), and aggravated identity theft in violation of 18 U.S.C. § 1028A. If convicted of those five crimes and sentenced consecutively,

the defendant would face more than eighty years of incarceration.  If convicted at trial of only one count of wire fraud, a conservative assessment of the defendant's exposure under the U.S. Sentencing Guidelines would be as follows:

| | | |
|---|---|---|
| U.S.S.G. § 2B1.1(a)(1) | Base Offense Level | 7 |
| U.S.S.G. § 2B1.1(b)(1) | Loss Amount: $158,000 | +10 |
| U.S.S.G. § 2B1.1(b)(2)(A) | Offense involved 200 victims | +2 |
| U.S.S.G. § 2B1.1(b)(10) | Sophisticated means | +2 |
| U.S.S.G. § 2B1.1(b)(11) | Use of authentication feature | +2 |
| | TOTAL OFFENSE SCORE | 23 |

With a total offense score of 23—and assuming the defendant has no criminal history—the likely range for a guideline compliant sentence would be 46 to 57 months' incarceration (Zone D). Such substantial penalties upon conviction demonstrate that the defendant faces a serious charge.

## II.     The Weight of the Evidence

The government's evidence of the defendant's guilt is compelling.  The defendant personally received the proceeds of the fraud scheme and was captured on security cameras collecting funds at various Walmart stores in Virginia, Maryland, and Washington, D.C.  (Aff. ¶¶ 10, 20.)  On some days, he used multiple false identities to collect funds from multiple victims at multiple Walmart locations within hours of each other.  (Aff. ¶¶ 21-23.)  On at least three occasions, the defendant collected those criminal proceeds at a Walmart store located in Washington, D.C., using three different aliases and three different drivers licenses.  (Aff. ¶ 24.)

The defendant's scheme involved the accumulation of substantial amounts of U.S. currency which the victims sent to the defendant via money transfer services between January 2019 and September 2020.  (Aff. ¶¶ 25-26.)  And as recently as November the defendant was found by CBP in possession of not less than $43,000 in cash which the defendant was attempting to remove from the United States without detection by law enforcement.  (Aff. ¶¶ 35-38.)

Moreover, on November 19, 2020, the defendant has admitted to law enforcement that he collected funds sent by victims at various Walmart stores under false identities. (Aff. ¶ 44.) He admitted to speaking to at least one victim on the phone who complained about not receiving the dog she attempted to purchase. (Aff. ¶ 44.) And admitted to keeping a portion of the ill-gotten gains from the scheme for himself before sending the remaining funds out of the country to Africa. (Aff. ¶ 44.) Consequently, the defendant's own statements to law enforcement rebut any suggestion that he was unaware of the criminal scheme or that he innocently received the victims' money.

### III.  **The History and Characteristics of the Defendant**

The third factor in section 3142(g) considers, among others, a detainee's "physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, [and] past conduct . . . ." 18 U.S.C. § 3142(g)(3). These considerations further weigh in favor of detention.

Without question, the defendant poses a serious risk of flight if he is released into the community. He was certainly aware of the government's investigation after a search warrant was executed at his personal residence on November 19, 2020, yet he was able to leave the United States without being detected by law enforcement. The defendant is known to have access to hundreds of false identification documents which he has used in connection with his scheme to defraud consumers. (Aff. ¶ 25.) Additionally, when the defendant was served with a subpoena requiring him to appear before a grand jury on December 16, the defendant failed to appear; Chief Judge Howell issued a material witness warrant; and the defendant was next found by law enforcement in Mexico.

Additionally, the government is aware that the defendant has had at least two prior contacts with the criminal justice system.  The defendant was arrested in Maryland during 2018 on charges that he had possessed a false government identification card.  Although ultimately sentenced to probation before judgement in that case, the government is aware the arresting officers in that case located in the defendant's possession fifty Illinois state driver's licenses and two South Carolina state drivers' license, each bearing a photo of the defendant containing different names, dates of birth, and addresses.  (Aff. ¶ 16.)  The defendant also has one arrest in Maryland from 2020 on a charge of an assault; the government has not ascertained the disposition of that matter at the time of this filing.

These contacts indicate that the defendant knows the criminal justice system and knows the importance of appearing in court as ordered—yet he failed to appear just last month before th grand jury as required and, instead, left the country undetected.  The defendant's conduct raises serious concerns about whether the defendant can be trusted to return to court even if released into the community on some form of electronic monitoring.  *United States v. Townsend*, 897 F.2d 989, 994-95 (9th Cir. 1990) ("Nor does the wearing of an electronic device offer assurance against flight occurring before measures can be taken to prevent a detected departure from the jurisdiction.").  *See also United States v. Ali*, 793 F. Supp. 2d 386, 392 (D.D.C. 2011) (finding that electronic monitoring would give a defendant with no ties to the United States "ample lead time if he wished to flee the country"); *United States v. Lee*, 195 F. Supp.3d 120, 132 (D.D.C. 2016) ("[W]hile defendant would be subject to 24-hour GPS monitoring by a computer, there is no human being monitoring that data, and so Pretrial Services would only become aware of an infraction by the defendant on the next business day.")

## IV.   The Danger to Any Person or the Community

The government acknowledges that the defendant has been charged by Complaint only with non-violent crimes.  However, the government maintains that the defendant poses a risk of participating in further fraud if released into the community.  The defendant could easily resume his fraudulent activities by accessing a phone or computer.  There is no plan in place that can prevent him from having this type of access if released.  *See United States v. Mbi Fuo Attia*, 19-cr-193 (TMD), 2020 WL 1872569 at *5 (D. Md. April 14, 2020) ("The Court was not confident that a pretrial services officer would be able to adequately monitor the defendant's access to the internet if released with a condition that she be prohibited from doing so.").

## CONCLUSION

For the foregoing reasons, the government respectfully submits that the Court should order that the defendant be detained pending further proceedings in this matter.

> Respectfully submitted,
>
> MICHAEL R. SHERWIN
> Acting United States Attorney
>
>
> By: _____
> JOHN W. BORCHERT (Bar No. 472824)
> Assistant United States Attorney
> Fraud & Public Corruption Section
> 555 Fourth Street, NW
> Washington, D.C.  20530
> (202) 252-7679
> john.borchert@usdoj.gov

January 8, 2021

CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of January 2021, I caused a copy of the foregoing to be served on counsel for the defendant with the Federal Public Defender.

                                               _____
                                               JOHN W. BORCHERT
                                               Assistant United States Attorney